**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

CHARLES NAPOLEON                                    CIVIL ACTION

VERSUS                                              NO. 20-1775

SHOWS, CALI & WALSH,                               SECTION "B"(4)
LLP, ET AL.

<u>**ORDER AND REASONS**</u>

Before the Court is defendants' motion to dismiss pursuant to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Rec. Docs. 25, 31, 37). For the following reasons,

**IT IS ORDERED** that defendants' motion to dismiss for lack of jurisdiction is **DENIED** and defendant's motion to dismiss for failure to state a claim is **GRANTED IN PART** and **DENIED IN PART**.

I.    <u>**FACTS AND PROCEDURAL HISTORY**</u>

This suit arises from a dispute over funds provided to Charles Napoleon following Hurricanes Katrina and Rita in 2005. Hurricane Katrina made landfall in Louisiana and Mississippi on August 29, 2005, and was quickly followed by Hurricane Rita on September 24, 2005. Rec. Doc. 25 at 7. The resulting devastation was unprecedented, leading Congress to appropriate "disaster recovery funds to the State of Louisiana, through HUD's Community Development Block Grant ("CDBG") Program." *Id.* at 7-8. HUD directed Louisiana to submit an Action Plan for Disaster Recovery, and through this Action Plan the State "created the Road Home Program

1

to compensate affected Louisiana homeowners for their losses." *Id.* at 8-9. CDBG grants funded the Road Home Program and the Louisiana Recovery Authority (LRA) operated it. *Id.* at 9, 9 n.10. The LRA is a "state agency created [by Executive order] to administer funds for recovery from Hurricanes Katrina and Rita, including CDBG Disaster Recovery Grant Funds." *Id.*

HUD maintained that they would "monitor the State's use of funds *and* its actions for consistency with the Action Plan." Rec. Doc. 31 at 4 (emphasis in original). Also, HUD would "instate risk analysis and on-site monitoring of grantee management of the grants and of the specific use of funds." *Id.* HUD's responsibility extended to "ensuring Louisiana's interpretation of the statutory and regulatory requirements were 'not plainly inconsistent with the [Housing and Community Development Act of 1974].'" Rec. Doc. 25 at 10 (alteration added) (quoting 24 C.F.R. § 570.480(c)). HUD's other responsibilities included: providing technical assistance, "advice, training, or program models to ensure the State of Louisiana complied with CDBG program requirements . . . ." *Id.* The State of Louisiana remained responsible for "the implementation, design, and administration of the Road Home Program in conformance with the applicable CDBG Program requirements set by HUD." *Id.* at 11 (internal quotations omitted) (quoting Rec. Doc. 25-2 at 69).

Whereas the Road Home Program disbursed four types of grants, only two are involved in this matter: the compensation grant and

the elevation grant. *See* Rec. Doc. 31 at 5. The compensation grant was given to homeowners to repair property damage on their homes. *Id.* Napoleon executed the compensation grant agreement on April 24, 2007, and received a check for $48,496.70 but "returned the check to the title company," thinking it was to purchase his house. *Id.* at 7.

The elevation grant was "given to eligible homeowners who agreed to elevate their homes within three years." *Id.* at 5. The elevation grant totaled $30,000.00 and to receive the grant, the homeowner had to execute the Road Home Program Elevation Incentive Agreement For Use With Prior Road Home Grant. *See id.*; Rec. Doc. 25 at 11-12. Napoleon entered into the agreement on July 23, 2008. Rec. Doc. 25-2 at 51. The agreement provided:

> Within three years of the date of this Elevation Incentive Agreement, the elevation (height) of the home on the above Property will be at or above the Advisory Base Flood Elevation (ABFE's) published by FEMA . . . I understand that to comply with this paragraph I must elevate my home to be at or above the elevation required by this Agreement even if the authority having jurisdiction of building code enforcement is not requiring elevation of the home . . . If the home on the property does not meet or exceed the applicable ABFE's or BFE's by three years from the date of the Elevation Incentive Agreement, the entire amount of my Elevation Incentive must be repaid to the State of Louisiana . . . This Agreement shall be enforceable, at law or in equity, by the State of Louisiana or the United States of America. I agree that [the Office of Community Development ("OCD")] shall be entitled to recover reasonable attorney's fees and other costs, in the event OCD institutes legal action against me for enforcement of this Agreement.

*Id.* at 50. "When Mr. Napoleon received the elevation grant, he used that money to repair his home." Rec. Doc. 31 at 7-8. Napoleon obtained a Certificate of Occupancy and Completion on October 12, 2011, which stated that he made repairs and renovated his home after the storms. *Id.* at 8. Napoleon did not keep copies of the original receipts or proof of repair. *Id.*

On July 26, 2013, HUD approved Action Plan Amendment No. 60 which stated:

> The cost to elevate homes has increased substantially since the Road Home program began disbursing Elevation Incentive (RHEI) awards to homeowners. In addition, many homeowners did not have adequate funds to complete the basic repairs needed to re-inhabit their homes at the pre-existing elevation. As a result, applicants receiving RHEI funds may have found it necessary to use those funds to complete their repair/reconstruction at the existing elevation. Since the primary goal of the Road Home Program is to enable applicants to return and reoccupy their homes, this Action Plan Amendment (APA 60) identifies how the use of RHEI funds will be considered in cases where applicants have used some or all of those funds to repair and re-occupy their homes. The purpose of APA 60 is to enable RHEI award amounts that have been used for home repair and reconstruction to be more accurately re-classified as part of the applicant's compensation award.

Rec. Doc. 31-12 at 2. This re-classification applied to "[o]nly Road Home applicants that have received an RHEI award and have not yet met the compliance terms associated with the award agreement . . . ." *Id.* The Amendment further stated that:

> If an eligible applicant . . . has used a portion or all of his or her RHEI funds for valid home repairs, then the respective amount used for home repairs will be added to the applicant's compensation award. Their RHEI award

> amount will be reduced accordingly. Homeowners must
> provide documentation that can demonstrate the use of
> the RHEI funds on valid home repairs.

*Id.* Two years later on December 28, 2015, the OCD sent Napoleon a letter stating that he could keep the elevation grant funds "[i]f you used your elevation incentive funds to finish the repairs to your home." Rec. Doc. 31 at 9, 51 (alteration in original) (internal quotations omitted).

On January 5, 2018, Mary Catherine Cali and John C. Walsh of Shows, Cali & Walsh, LLP mailed Napoleon a letter which stated that Napoleon "failed to establish compliance with [his] RHEI obligations." Rec. Doc. 25-2 at 53. The letter requested documents establishing that (1) the home was elevated; (2) the funds were used to elevate the home but elevation was never completed; or (3) the funds were used to finish repairs to the home. *See id.* The letter also stated that:

> You have 30 days after your receipt of this letter to
> notify our office that you dispute the validity of this
> [RHEI], or any portion thereof. Failure to timely do so
> will result in an assumption by our office that the full
> amount of the RHEI repayment claim is valid.

*Id.* at 54. The letter further included that "if you do not take any of the actions outlined above, within ninety days after your receipt of this letter, Road Home may proceed with further action against you, including legal action, in connection with the amount of RHEI funds owed as outlined above." *Id.* At this point, Napoleon did not submit any additional documentation. Rec. Doc. 31 at 9. On

February 12, 2012, defendants received a call on behalf of Napoleon[1] that they previously submitted documentation on how the money was used, but defendants could find no such documentation in their records. Rec. Doc. 31-13 at 2. Then between June and July of 2019, Napoleon submitted additional photographs to show that he, as the applicant, shored his home. Defendants, however, could not observe an increase in elevation. *See id.* at 1.

On July 1, 2019, Shows, Cali & Walsh, LLP filed suit in the Orleans Civil District Court on behalf of the State of Louisiana, Division of Administration, Office of Community Development — Disaster Recovery Unit, naming Charles and Mary Ann Napoleon as defendants. Rec. Doc. 31 at 10; *see State of La., Div. of Admin., Off. of Cmty. Dev. — Disaster Recovery Unit v. Napoleon*, 2019-6927 (Orleans Parish Civ. Dist. Ct. 2019). In that suit, the State alleged Napoleon must return his $30,000.00 elevation grant. Rec. Doc. 31 at 10; *see* Rec. Doc. 31-4. On September 3, 2019, Napoleon answered, making no affirmative defenses. Rec. Doc. 25 at 13; Rec. Doc. 31 at 10. The State then moved for summary judgment, but on January 23, 2020, before the motion could be heard, Napoleon filed a voluntary Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Louisiana (Case No. 20-10175). Rec. Doc. 31 at 10-11. On the A/B schedule Napoleon

---

[1] The call came from a woman named Ashlynn, it is unclear the relation to Charles and Mary Napoleon. The call log states that Charles Napoleon gave verbal permission for Ashlynn to speak on his behalf. Rec. Doc. 31-13 at 2.

answered "No" to question 33 for "Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment[;]" however, Napoleon answered "Yes" to question 34 for "Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims[.]" Rec. Doc. 31-14 at 11. In the claim description, Napoleon wrote "Possible suit vs. law firm representing Road Home Program, and State of LA, regarding improper collection of Road Home Grant funds[.]" *Id.*

Napoleon next filed this suit against the law firm representing the Road Home Program on June 21, 2020, which defendants answered on October 30, 2020. The complaint was then amended on February 1, 2021. In the amended complaint, plaintiff makes two claims for relief. Plaintiff's first claim is that under 15 U.S.C. §§ 1692e(2)(A), (5), (10), and § 1692f, defendants were prohibited from trying to collect the grant money from the plaintiff, because it was not owed to the State, as plaintiff used the funds within the acceptable parameters of the grant. *See* Rec. Doc. 19 at 11-13. Plaintiff also brought their second claim under 15 U.S.C. §§ 1692e(2)(A), (5), (10), and § 1692f, and contends that even if the money was owed to the State, defendants were time-barred from collection under the six-year federal statute of limitations, 28 U.S.C. § 2415(b), or in the alternative the five-year liberative prescription period for actions on negotiable and

nonnegotiable instruments under Louisiana Civil Code Article 3498. *Id.* at 13-15.[2] On July 16, 2016, defendants submitted the instant motion to dismiss for lack of standing/subject matter jurisdiction and for failure to state a claim.[3]

## II.  LAW AND ANALYSIS

### A. Standard of Review for a 12(b)(1) Motion

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). "On a Rule 12(b)(1) motion, the party seeking to invoke federal jurisdiction has the burden [of proof]." *Boudreaux v. La. State Bar Ass'n*, 3 F.4th 748, 753 (5th Cir. 2021). The district court should only grant a 12(b)(1) motion "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161. In the Fifth Circuit, the standard of review applicable to motions to dismiss under Rule 12(b)(1) resembles the standard of

---

[2] While plaintiff states in the amended complaint that the Louisiana Civil Code Article 3498 applies if state law applies, in plaintiff's response to defendants' motion to dismiss, he argues that if state law applies, the five-year liberative prescription periods of Article 1564 or Louisiana Revised Statute 9:2772 apply, not the liberative prescription period of Article 3498. *Compare* Rec. Doc. 19, *with* Rec. Doc. 31.

[3] Then on August 12, 2021, plaintiff filed a motion for class certification under Rule 23 of the Federal Rules of Civil Procedure. Rec. Doc. 28. This motion is still pending.

review for motions to dismiss under Rule 12(b)(6), but also allows the Court to consider a broader range of materials. *Mansa Musa El v. United States*, No. 21-cv-968, 2021 WL 4148118, at *3 (E.D. La. Sept. 13, 2021) (citing *Williams v. Wynne*, 533 F.3d 360, 364-65 n.2 (5th Cir. 2008)). Under 12(b)(6), the district court "must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Schlesinger v. ES & H, Inc.*, No. 11-cv-294, 2011 WL 3900577, at *2 (E.D. La. Sept. 2, 2011) (Lemelle, J.) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir.2009)).

**B. Standard of Review for a 12(b)(6) Motion**

When addressing a 12(b)(6) motion, the "district court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Schlesinger, Inc.*, 2011 WL 3900577, at *2 (Lemelle, J.) (citing *True*, 571 F.3d at 417). A plaintiff must plead enough facts, if taken as true, to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A "formulaic recitation of the elements of a cause of action" will not meet this pleading standard. *Id.* at 555. Plausibility does not require a showing of probability as a well-pleaded complaint can proceed even if "actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556. However, legal conclusions are not entitled

to a presumption of truth for the purposes of a 12(b)(6) motion. *Ashcroft v. Iqbal*, 129 U.S. 1937, 1949 (2009).

### C. Standing

Plaintiff has standing to bring this suit. Rec. Doc. 31-14 at 11, 16; *see also* Rec. Doc. 31 at 11. Under the Bankruptcy Code, "debtors are under a continuing duty to disclose all pending and potential claims." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384–85 (5th Cir. 2008). "The bankruptcy trustee . . . has exclusive standing to assert undisclosed claims that fall within the bankruptcy estate." *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 362 (5th Cir. 2014). A debtor loses all rights to assets that are a part of the bankruptcy estate unless the estate abandons the asset. *See Kane*, 535 F.3d at 385. Abandoned property reverts back to the debtor, and all the debtor's rights are restored as if no bankruptcy was filed. *See id.* Therefore, where the debtor does not disclose the possible claim to the trustee in the bankruptcy schedules, the claim remains part of the bankruptcy estate. *See generally, id.*

Defendants argue that plaintiff did not disclose its claim against defendants; therefore, the claim remains with the bankruptcy estate, and plaintiff lacks standing. However, Napoleon did list the potential lawsuit in Part 4, Question 34 of Schedule A/B, which asked for "Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to

10

set off claims." *See* Rec. Doc. 31-14 at 11 ("Possible suit vs. law firm representing Road Home Program, and State of LA, regarding improper collection of Road Home Grant funds"). The Supervisor at the Chapter 13 Trustee's office confirmed that the lawsuit was listed in the schedules, but the Trustee simply committed an oversight in "fail[ing] to send out a lawsuit letter or monitor for 6 month status." *Id.* at 16. Consequently, plaintiff has standing and this Court does not lack subject matter jurisdiction.

### D. The Ten-Year Prescription Period in Louisiana Civil Code Article 3499 Applies

Plaintiff is incorrect in arguing that the six-year federal statute of limitation or the five-year state liberative prescription period applies. First, plaintiff errs in claiming that the six-year statute of limitations pursuant to 28 U.S.C. § 2415(a) applies. Rec. Doc. 31 at 12. The statute provides:

> [E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later . . . .

28 U.S.C.A. § 2415(a). Title 28 defines "agency" as "any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary

interest, unless the context shows that such term was intended to be used in a more limited sense." 28 U.S.C. § 451.

In determining whether the federal statute of limitations applies, the Court analyzes whether OCD is an agent of the federal government. To do so, the Court relies on *United States v. Orleans*, 425 U.S. 807 (1976). *Orleans* held that the Warren-Trumbull Council for Economic Opportunity and the Westlawn Neighborhood Opportunity Center, which were federally funded local centers, were not federal agencies or instrumentalities as to fall within the meaning of the Federal Torts Claim Act (FTCA). *United States v. Orleans*, 425 U.S. 807, 819 (1976); *see also* Rec. Doc. 25 at 21. The Court reasoned that "[b]illions of dollars of federal money are spent each year on projects performed by people and institutions with contract with the Government." *Orleans*, 425 U.S. at 815-16. Regulations aimed at assuring compliance with federal goals do not convert the acts of local entities into federal governmental acts. *Id.* The Court further clarified that in the context of the FTCA, "the question here is not whether the community action agency receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." *Id.* at 815.

Under this standard, plaintiff cannot show that HUD controlled the day-to-day operations of the Road Home Program. Whereas HUD performed audits, provided technical assistance, and

ensured that Louisiana's interpretation of the statutory and regulatory requirements was consistent with HDCA, HUD did not participate in the day-to-day governance or implementation of the program. Rec. Doc. 25 at 9-10. Day-to-day governance, development, and implementation of the Road Home grant program was performed by the Louisiana Recovery Authority (LRA), which had its Action Plans approved by the Governor of Louisiana, and the Louisiana legislature. *Id.* at 10, 19-20. The Road Home program's only connection to the federal government is that the federal government provided funds to the State of Louisiana, which, through the OCD, used those funds for the Road Home Program. Mere funding, as apparent here, is not enough to establish agency under *Orleans*.

Plaintiff argues that *Orleans* is inapplicable because the driving concern there was "attaching liability to the federal government for countless torts based on nothing more than the countless funds" that the federal government provides to local programs. *See* Rec. Doc. 31 at 15. Additionally, plaintiff claims *Orleans* was decided according to principles of vicarious liability and the Court should instead rely on *Dixson v. United States*, 465 U.S. 482 (1984), in determining the appropriate statute of limitations. *See id.* These arguments, however, are unavailing.

Generally, *Dixson* applies in criminal matters. The question presented in *Dixson* was "whether local authorities administering HDCA [Housing and Community Development Act of 1974] grants should

be considered public officials under the federal bribery statute."
*Dixson*, 465 U.S. at 500. *Dixson* is concerned with holding criminals
accountable for violating the federal bribery statute, and is cited
almost exclusively in criminal cases. *See, e.g.*, *United States v.
Wilson*, 408 F. App'x 798, 805-06 (5th Cir. 2010); *United States v.
Naccarato*, 921 F.2d 282, 1990 WL 212674, at *2 (9th Cir. 1990);
*but see Rowan Ct. Subdivision 2013 Ltd. P'ship v. La. Hous. Corp.*,
No. CV 15-870-JWD-RLB, 2017 WL 4018859, at *8 (M.D. La. Sept. 12,
2017), *aff'd sub nom.*, 749 F. App'x 234 (5th Cir. 2018) (applying
*Dixson* in a civil matter). On the other hand, *Orleans* is concerned
with extending liability to the federal government and its agents
in civil matters. Rec. Doc. 25 at 15. Moreover, plaintiff's
argument that *Orleans* is only applicable to the FTCA is unfounded.
*Adams v. State Farm Fire & Cas. Co.*, No. CIV. A. 96-1571, 1996 WL
592734, at *2 (E.D. La. Oct. 10, 1996) (applying the *Orleans* test
for federal agency to a claim under the Equal Access to Justice
Act); *White v. N. La. Legal Assistance Corp.*, 468 F. Supp. 1347,
1351 (W.D. La. 1979) (applying *Orleans* for a claim under the Legal
Services Act).

   *Orleans* is therefore the appropriate standard here, and
because day-to-day governance, development, and implementation of
the Road Home grant program was performed by LRA not the federal
government, the Court must apply a state prescription. *Id.* at 10.

The question remains as to which state prescription or peremptive period applies. The applicable state prescription period is ten-years under Article 3499. "An action on a contract is governed by the prescriptive period of 10 years for personal actions." *First La. Bank v. Morris & Dickson, Co.*, 45,668 (La. App. 2 Cir. 11/3/10); 55 So. 3d 815, 825 (citing La. Civ. Code art. 3499). "A personal action is one brought to enforce an obligation against the obligor, personally and independently of the property which he may own, claim, or possess." La. Code Civ. Proc. art. 422. Article 3499 states, "Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years." La. Civ. Code art. 3499.

But Article 3499 will only apply if another more-specific article does not govern. *See, e.g.*, *Merchants Nat. Bank & Tr. Co. of Indianapolis v. Smith, Hinchman & Grylls Assocs., Inc.*, 876 F.2d 1202, 1206 (5th Cir. 1989) (refusing to apply Article 3499 when the more specific Article 3492 governed the particular action). Here, the grant agreement was a contract between a state citizen, and the State of Louisiana, Division of Administration, OCD through the Road Home Program. Rec. Doc. 25-2 at 48-52. Thus, defendants' action against plaintiff was a personal action, and according to Article 3499, it is only barred after ten years. Defendants, consequently, have a right to seek recovery for plaintiff's alleged debt.

Plaintiff claims that two other prescriptive periods apply here, but neither are appropriate. Article 1564 which governs prescription of donations inter vivos states that "[a]n action to dissolve a donation for failure to fulfill the conditions or perform the charges imposed on the donee prescribes in *five years*, commencing the day the donee fails to perform the charges or fulfill his obligation or ceases to do so." La. Civ. Code art. 1564 (emphasis added). However, "a donation inter vivos by manual gift requires the simultaneous occurrence of the donor's intent to give and the actual possession by delivery." *See Montet v. Lyles*, 93-CA-1724 (La. App. 1 Cir. 6/24/94); 638 So. 2d 727, 730. "The donee bears the burden of proving donative intent and such proof must be strong and convincing." *Id.* Determining donative intent is a question of fact. *Id.*

Here, there is no donative intent. The only indication of donative intent that plaintiff argues is that the word "grant" implies the Road Home Program elevation grant was a donation. Rec. Doc. 31 at 20. Black's Law Dictionary defines a "grant" as "[a]n agreement that creates a right of any description other than the one held by the grantor." *Grant*, Black's Law Dictionary (8th ed. 2004). Under this definition alone, plaintiff cannot show donative intent.

More importantly the Louisiana Constitution article VII, § 14(A) offers that, "[e]xcept as otherwise provided by this

constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private." La. Const. art. VII, § 14(A). As the funds of the state cannot be donated, plaintiff's Road Home grant is not a donation under Article 1564. Section 14(B)(1) of the Louisiana Constitution does allow "the use of public funds for programs of social welfare for the aid and support of the needy;" however, it is unlikely that the elevation or compensation grant falls under this exception. *See* La. Const. art. VII, § 14(B)(1); *see, e.g.*, La. Att'y Gen. Op. No. 12-0114 (Sept. 14, 2012) (using public funds to clear a body of water behind private homes in a neighborhood would be a violation of this Section); La. Att'y Gen. Op. No. 13-0065 (Aug. 13, 2013) ("Public funds cannot be used to make repairs to bridges located on private property unless the Parish determines that the benefit of doing so would accrue to the Parish and not the private landowner."). Plaintiff does not satisfy the "strong and convincing" burden of proof. *See Montet*, 638 So. 2d at 730.

Plaintiff's suggestion that Louisiana Revised Statute § 9:2772 applies must also be rejected. Section 9:2772 "imposes a five-year peremptive period for breach of construction contracts." Rec. Doc. 31 at 21; *see* La. Rev. Stat. § 9:2772. The statute provides for a five-year peremptive period for actions "arising

out of an engagement of planning, construction, design, or building immovable or movable property . . . ." La. Rev. Stat. § 9:2772(A).

To determine whether there even is a contract to build as to fall within Section 9:2772 the court has developed the following test:

> First, in a contract to build, the "purchaser" has some control over the specifications of the object. Second, the negotiations in a contract to build take place before the object is constructed. Lastly, and most importantly, a building contract contemplates not only that the builder will furnish the materials, but that he will also furnish his skill and labor in order to build the desired object.

*Alonzo v. Chifici*, 526 So. 2d 237, 241 (La. Ct. App. 5 Cir. 1988) (quoting *Acadiana Health Club, Inc. v. Hebert*, 469 So. 2d 1186, 1189 (La. Ct App. 3 Cir. 1985) (first citing *Duhon v. Three Friends Homebuilders Corp.*, 396 So.2d 559 (La. Ct. App. 3 Cir. 1981); then citing *Airco Refrigeration Serv., Inc. v. Fink*, 134 So.2d 880 (1961))), *writ denied*, 527 So. 2d 307 (La. 1988).[4]

Regarding the first element, OCD is not a "purchaser" within the meaning of the statute. The only evidence suggesting OCD is a purchaser is that "On July 23, 2008, Mr. Napoleon executed an agreement with the OCD to elevate his home." Rec. Doc. 31 at 22.

---

[4] There are other tests available, such as the "value test" which "determines whether the labor expended in constructing the item, or the materials incorporated therein, constitute the 'principal value of the contract.'" *Alonzo*, 526 So. 2d at 241 (citing *Price v. Huey Childs Builder, Inc.*, 426 So. 2d 398 (La. Ct. App. 2 Cir. 1983), *writ denied*, 433 So. 2d 164 (La.)). However, both plaintiff and defendants cite to the test as outlined in *Acadiana Health Club* and stated above. Rec. Doc. 31 at 22; Rec. Doc. 37 at 7.

Turning again to Black's Law Dictionary, a purchaser is "[s]omeone who obtains property for money or other valuable consideration; a buyer." *Purchaser*, Black's Law Dictionary (11th ed. 2019). This definition, along with the statute's ordinary meaning, weighs against finding OCD to be a "purchaser." Even so, OCD must also have exercised "some control over the specifications of the object." *See Alonzo*, 526 So. 2d at 241 (citations omitted). OCD did not exercise this control, as the only requirement was that the work conform to the applicable minimal building codes as published by FEMA. Rec. Doc. 31 at 22; Rec. Doc. 37 at 7. Therefore, the first element is not satisfied.

Second, the Court requires that the negotiations of the contract take place before the object is built. *See Alonzo*, 526 So. 2d at 241. Whereas no actual negotiations transpired, the agreement was executed before the construction was to occur, and as construction never occurred, the contract necessarily was executed prior to elevation. Therefore, the second element is satisfied. Rec. Doc. 31 at 22; Rec. Doc. 37 at 7.

Finally, the last requirement is that "a building contract contemplates not only that the builder will furnish the materials, but that he will also furnish the skill and labor in order to build the desired object." *See Alonzo*, 526 So. 2d at 241. This contract did not contemplate that Napoleon would perform the elevation or preparatory work himself or that Napoleon would furnish the skills

or labor to elevate his home. The funds were an incentive to elevate the home, not compensation for skills, labor, and materials. Rec. Doc. 37 at 8. Therefore, the third element is not satisfied.[5] Because the elements of a construction contract cannot be satisfied, the five-year peremptive period for breach of construction contracts under Section 9:2772 cannot apply.[6]

As the ten-year prescriptive period applies in this case, defendants were not time-barred from collecting from plaintiff, and therefore, plaintiff's second claim must be dismissed. Rec. Doc. 19 at 13-15.

### E. Whereas the Debt Was Not Time-Barred, Plaintiff States a Claim Upon Which Relief Can Be Granted

Upon applying Article 3499, defendants were not time-barred from attempting to collect money owed by Napoleon; however, in construing the facts in the light most favorable to the plaintiff, the Court finds plaintiff has stated a claim, albeit minimally, upon which relief can be granted. Taking the facts pleaded by plaintiff as true, it is plausible that plaintiff did not owe the money for which the defendants attempted to collect. As stated,

---

[5] Because Napoleon cannot show there was a construction contract, there is no need to address defendants' other argument of subsection F, which carves out an exception from the five year peremptive period for the owner of the property, when the action is brought against the owner of the property as the owner. See *Donald G. Lambert Contractor v. Par. of Jefferson*, 97-140 (La. Ct. App. 9/17/97); 700 So. 2d 894, *cert. denied*, 97-2557 (La. 1997); 706 So. 2d 459.

[6] As plaintiff does not satisfy these elements, the Court also declines to address additional arguments regarding Section 9:2772's applicability, such as that there was no construction defect and that the very nature of the statutory language demonstrates its inapplicability.

plausibility does not require probability, and plaintiff has stated a claim under Rule 12(b)(6).

According to the record, Napoleon received $48,496.70 for the original compensation grant, but Napoleon returned the check to the title company. *Id.* at 7. Then Napoleon received $30,000 for the elevation grant from the Road Home Program, but he used the funds to make repairs and renovations to his home. *Id.* at 5, 8. Napoleon provided all original receipts and proof of repair to the State in 2011 to show compliance with the agreement. *Id.* at 8. Then on July 26, 2013, HUD approved Action Plan Amendment No. 60 which allowed the elevation grant to be reclassified as a compensation grant where the original compensation grant was insufficient to make the necessary home repairs and the Road Home applicants had not yet met the compliance terms associated with their agreement. Rec. Doc. 31-12 at 2. In 2015, the OCD sent Napoleon a letter notifying him that the elevation funds could be kept if he used the funds to finish repairs on his home. Rec. Doc. 31 at 9. Napoleon did not keep any of the original receipts and defendants could find no evidence of their submission. *Id.* at 8; Rec. Doc. 31-13 at 2. Plaintiff did submit additional photographs to show that Napoleon shored their house, but defendants could not observe an increase in elevation. Rec. Doc. 31-13 at 1. Plaintiff was allocated $48,496.70 for compensation, and only used $30,000,

even though he spent a total of $68,000 to make substantial repairs to the home. Rec. Doc. 31 at 24.

While it is not settled whether plaintiff did owe the funds he received under the elevation grant, based on the above facts, it is arguably plausible that the funds could have been reclassified as proper under the compensation grant. Therefore, at this stage, plaintiff's claim survives summary dismissal for now.

New Orleans, Louisiana this 30th day of November, 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE