### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES NAPOLEON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1775** |
| **SHOWS, CALI & WALSH, LLP, ET AL.** | **SECTION "B"(4)** |

### ORDER AND REASONS

Before the Court is plaintiff's motion for class certification (Rec. Docs. 28, 32, 39). Defendants filed an opposition to the motion. For the following reasons,

**IT IS ORDERED** that the motion is **DENIED**.

### I.    FACTS AND PROCEDURAL HISTORY

This suit arises from a dispute over funds provided to Charles Napoleon following Hurricanes Katrina and Rita in 2005. Hurricane Katrina made landfall in Louisiana and Mississippi on August 29, 2005, and was quickly followed by Hurricane Rita on September 24, 2005. Rec. Doc. 25 at 7. The resulting devastation was unprecedented, leading Congress to appropriate "disaster recovery funds to the State of Louisiana, through HUD's Community Development Block Grant ("CDBG") Program." *Id.* at 7-8. HUD directed Louisiana to submit an Action Plan for Disaster Recovery, and through this Action Plan the State "created the Road Home Program to compensate affected Louisiana homeowners for their losses." *Id.* at 8-9. CDBG grants funded the Road Home Program and the Louisiana

1

Recovery Authority (LRA) operated it. *Id.* at 9, 9 n.10. The LRA is a "state agency created [by Executive order] to administer funds for recovery from Hurricanes Katrina and Rita, including CDBG Disaster Recovery Grant Funds." *Id.*

HUD maintained that they would "monitor the State's use of funds *and* its actions for consistency with the Action Plan." Rec. Doc. 31 at 4 (emphasis in original). Also, HUD would "instate risk analysis and on-site monitoring of grantee management of the grants and of the specific use of funds." *Id.* HUD's responsibility extended to "ensuring Louisiana's interpretation of the statutory and regulatory requirements were 'not plainly inconsistent with the [Housing and Community Development Act of 1974].'" Rec. Doc. 25 at 10 (alteration added) (quoting 24 C.F.R. § 570.480(c)). HUD's other responsibilities included: providing technical assistance, "advice, training, or program models to ensure the State of Louisiana complied with CDBG program requirements . . . ." *Id.* The State of Louisiana remained responsible for "the implementation, design, and administration of the Road Home Program in conformance with the applicable CDBG Program requirements set by HUD." *Id.* at 11 (internal quotations omitted) (quoting Rec. Doc. 25-2 at 69).

Whereas the Road Home Program disbursed four types of grants, only two are involved in this matter: the compensation grant and the elevation grant. *See* Rec. Doc. 31 at 5. The compensation grant was given to homeowners to repair property damage on their homes.

*Id.* Napoleon executed the compensation grant agreement on April 24, 2007, and received a check for $48,496.70 but "returned the check to the title company," thinking it was to purchase his house. *Id.* at 7.

The elevation grant was "given to eligible homeowners who agreed to elevate their homes within three years." *Id.* at 5. The elevation grant totaled $30,000.00 and to receive the grant, the homeowner had to execute the Road Home Program Elevation Incentive Agreement For Use With Prior Road Home Grant. *See id.*; Rec. Doc. 25 at 11-12. Napoleon entered into the agreement on July 23, 2008. Rec. Doc. 25-2 at 51. The agreement provided:

> Within three years of the date of this Elevation Incentive Agreement, the elevation (height) of the home on the above Property will be at or above the Advisory Base Flood Elevation (ABFE's) published by FEMA . . . I understand that to comply with this paragraph I must elevate my home to be at or above the elevation required by this Agreement even if the authority having jurisdiction of building code enforcement is not requiring elevation of the home . . . If the home on the property does not meet or exceed the applicable ABFE's or BFE's by three years from the date of the Elevation Incentive Agreement, the entire amount of my Elevation Incentive must be repaid to the State of Louisiana . . . This Agreement shall be enforceable, at law or in equity, by the State of Louisiana or the United States of America. I agree that [the Office of Community Development ("OCD")] shall be entitled to recover reasonable attorney's fees and other costs, in the event OCD institutes legal action against me for enforcement of this Agreement.

*Id.* at 50. "When Mr. Napoleon received the elevation grant, he used that money to repair his home." Rec. Doc. 31 at 7-8. Napoleon

obtained a Certificate of Occupancy and Completion on October 12, 2011, which stated that he made repairs and renovated his home after the storms. *Id.* at 8. Napoleon did not keep copies of the original receipts or proof of repair. *Id.*

On July 26, 2013, HUD approved Action Plan Amendment No. 60 which stated:

> The cost to elevate homes has increased substantially since the Road Home program began disbursing Elevation Incentive (RHEI) awards to homeowners. In addition, many homeowners did not have adequate funds to complete the basic repairs needed to re-inhabit their homes at the pre-existing elevation. As a result, applicants receiving RHEI funds may have found it necessary to use those funds to complete their repair/reconstruction at the existing elevation. Since the primary goal of the Road Home Program is to enable applicants to return and reoccupy their homes, this Action Plan Amendment (APA 60) identifies how the use of RHEI funds will be considered in cases where applicants have used some or all of those funds to repair and re-occupy their homes. The purpose of APA 60 is to enable RHEI award amounts that have been used for home repair and reconstruction to be more accurately re-classified as part of the applicant's compensation award.

Rec. Doc. 31-12 at 2. This re-classification applied to "[o]nly Road Home applicants that have received an RHEI award and have not yet met the compliance terms associated with the award agreement . . . ." *Id.* The Amendment further stated that:

> If an eligible applicant . . . has used a portion or all of his or her RHEI funds for valid home repairs, then the respective amount used for home repairs will be added to the applicant's compensation award. Their RHEI award amount will be reduced accordingly. Homeowners must provide documentation that can demonstrate the use of the RHEI funds on valid home repairs.

4

*Id.* Two years later on December 28, 2015, the OCD sent Napoleon a letter stating that he could keep the elevation grant funds "[i]f you used your elevation incentive funds to finish the repairs to your home." Rec. Doc. 31 at 9, 51 (alteration in original) (internal quotations omitted).

On January 5, 2018, Mary Catherine Cali and John C. Walsh of Shows, Cali & Walsh, LLP mailed Napoleon a letter which stated that Napoleon "failed to establish compliance with [his] RHEI obligations." Rec. Doc. 25-2 at 53. The letter requested documents establishing that (1) the home was elevated; (2) the funds were used to elevate the home but elevation was never completed; or (3) the funds were used to finish repairs to the home. *See id.* The letter also stated that:

> You have 30 days after your receipt of this letter to notify our office that you dispute the validity of this [RHEI], or any portion thereof. Failure to timely do so will result in an assumption by our office that the full amount of the RHEI repayment claim is valid.

*Id.* at 54. The letter further included that "if you do not take any of the actions outlined above, within ninety days after your receipt of this letter, Road Home may proceed with further action against you, including legal action, in connection with the amount of RHEI funds owed as outlined above." *Id.* At this point, Napoleon did not submit any additional documentation. Rec. Doc. 31 at 9. On February 12, 2012, defendants received a call on behalf of

5

Napoleon[1] that they previously submitted documentation on how the money was used, but defendants could find no such documentation in their records. Rec. Doc. 31-13 at 2. Then between June and July of 2019, Napoleon submitted additional photographs to show that he, as the applicant, shored his home. Defendants, however, could not observe an increase in elevation. *See id.* at 1.

On July 1, 2019, Shows, Cali & Walsh, LLP filed suit in the Orleans Civil District Court on behalf of the State of Louisiana, Division of Administration, Office of Community Development — Disaster Recovery Unit, naming Charles and Mary Ann Napoleon as defendants. Rec. Doc. 31 at 10; *see State of La., Div. of Admin., Off. of Cmty. Dev. — Disaster Recovery Unit v. Napoleon*, 2019-6927 (Orleans Parish Civ. Dist. Ct. 2019). In that suit, the State alleged Napoleon must return his $30,000.00 elevation grant. Rec. Doc. 31 at 10; *see* Rec. Doc. 31-4. On September 3, 2019, Napoleon answered, making no affirmative defenses. Rec. Doc. 25 at 13; Rec. Doc. 31 at 10. The State then moved for Summary Judgment, but on January 23, 2020, before the motion could be heard, Napoleon filed a voluntary Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Louisiana (Case No. 20-10175). Rec. Doc. 31 at 10-11. On the A/B schedule Napoleon answered "No" to question 33 for "Claims against third parties,

---

[1] The call came from a woman named Ashlynn, it is unclear the relation to Charles and Mary Napoleon. The call log states that Charles Napoleon gave verbal permission for Ashlynn to speak on his behalf. Rec. Doc. 31-13 at 2.

whether or not you have filed a lawsuit or made a demand for payment[;]" however, Napoleon answered "Yes" to question 34 for "Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims[.]" Rec. Doc. 31-14 at 11. In the claim description, Napoleon wrote "Possible suit vs. law firm representing Road Home Program, and State of LA, regarding improper collection of Road Home Grant funds[.]" *Id.*

Napoleon next filed this suit against the law firm representing the Road Home Program on June 21, 2020, which defendants answered on October 30, 2020. The complaint was then amended on February 1, 2021. In the Amended Complaint, plaintiff makes two claims for relief. Plaintiff's first claim is that under 15 U.S.C. §§ 1692e(2)(A), (5), (10), and § 1692f, defendants were prohibited from trying to collect the grant money from the plaintiff, because it was not owed to the State, as plaintiff used the funds within the acceptable parameters of the grant. *See* Rec. Doc. 19 at 11-13. Plaintiff also brought their second claim under 15 U.S.C. §§ 1692e(2)(A), (5), (10), and § 1692f, and contends that even if the money was owed to the State, defendants were time-barred from collection under the six-year federal statute of limitations, 28 U.S.C. § 2415(b), or in the alternative the five-year liberative prescription period for actions on negotiable and nonnegotiable instruments under Louisiana Civil Code Article 3498.

*Id.* at 13-15.[2] On July 16, 2016, defendants submitted the motion to dismiss for lack of standing/subject matter jurisdiction and for failure to state a claim.[3] Then on August 12, 2021, plaintiff filed a motion for class certification under Rule 23 of the Federal Rules of Civil Procedure. Rec. Doc. 28.

## II. <u>LAW AND ANALYSIS</u>

### A. Standing

Where the class representative presents a possible standing issue, standing "must be addressed first, prior to deciding class certification," *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020), as "standing is an inherent prerequisite to the class certification inquiry," *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 570 F. Supp. 2d 851, 855 (E.D. La. 2008) (internal citations omitted) (citing *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002)). "[C]ourts consistently hold that a class action may not be certified unless the named plaintiff has standing to seek the relief requested." *Hardin v. Harshbarger*, 814 F. Supp. 703, 706 (N.D. Ill. 1993) (citing *O'Shea v. Littleton*, 414 U.S.

---

[2] While plaintiff states in the Amended Complaint that the Louisiana Civil Code Article 3498 applies if state law applies, in plaintiff's response to defendants' Motion to Dismiss, he argues that if state law applies, the five-year liberative prescription periods of Article 1564 or Louisiana Revised Statute 9:2772 apply, not the liberative prescription period of Article 3498. *Compare* Rec. Doc. 19, *with* Rec. Doc. 31.

[3] This Court denied defendants' motion to dismiss for lack of jurisdiction and granted in part and denied in part defendants' motion to dismiss for failure to state a claim. Rec. Doc. 42.

488, 494 (1974)).[4] It is the plaintiff's burden to demonstrate that they have standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). To establish Article III standing the plaintiff must "allege (1) an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'" *In re Deepwater Horizon*, 785 F.3d 1003, 1018-19 (5th Cir. 2015) (internal quotations omitted) (quoting *Lujan*, 504 U.S. at 590).

There are two standards available to determine if Article III standing exists in a class action. Under the *Denney* standard, "courts look at the class definition to 'ensure that absent class members possess Article III standing.'" *Id.* at 1019 (quoting *In re Deepwater Horizon* (*Deepwater Horizon II*), 739 F.3d 790, 795 (5th Cir. 2014)); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006). "This standard 'does not require that each member of a class submit evidence of personal standing, so long as every class member contemplated by the class definition can allege standing.'" *In re Deepwater Horizon*, 785 F.3d at 1019 (quoting *Deepwater Horizon II*, 739 F.3d at 804). Then under the *Kohen* standard the court "look[s] to whether the *named*

---

[4] *O'Shea* states: "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." 414 U.S. 488, 494 (1974).

*plaintiffs* or *class representatives* have standing, 'ignor[ing] the absent class members entirely.'" *Id.* (quoting *Deepwater Horizon II*, 739 F.3d at 800); *see also Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672 (7th Cir. 2009).

Here, plaintiff fails to satisfy standing under both tests, so the Court need not adopt a specific one. In the motion for class certification, plaintiff's proposed class is:

> a. All Louisiana residents, who:
> b. Received a Road Home Elevation Grant for personal, family, or household purposes;
> c. Whom Defendants sued within one year prior to the filing of this lawsuit;
> d. Which lawsuit was filed more than 6 years after the consumer's contract deadline to provide proof of elevation.[5]

Rec. Doc. 28-1 at 1-2. Under both the *Denney* and *Kohen* standards plaintiff fails to demonstrate standing as this Court has dismissed plaintiff's claim that defendants' actions were time-barred as required by part (d) of the class definition. *See id.* Because this Court has already dismissed plaintiff's underlying claim for the

---

[5] It is worth noting that in plaintiff's Amended Complaint, plaintiff lists two classes, which are different than those included in this instant motion. Rec. Doc. 19 at 8-9. The first class is defined as:
> (a) All Louisiana residents, who: (b) Had executed an agreement with the OCD to receive the Road Home Elevation Grant; (c) Reported the Elevation Grant was used to repair the home; (d) DEFENDANTS failed to perform an on-site inspection to determine if the grant was used to repair the home or for interim living expenses while repairing the home, (e) And continued to collect the Elevation Grant without applying the cost of repairs; (f) Within one year prior to the filing of this action.

The second class is defined as: "(g) All Louisiana residents, who: (h) Received a Road Home Grant for personal, family, or household purposes (i) Whom DEFENDANTS sued within one year prior to the filing of this lawsuit; (j) More than 5 years after the consumer's contract deadline to provide proof of elevation."

class action, plaintiff cannot establish standing. *See Hardin*, 814
F. Supp. at 706-07.

### B. Rule 23 Requirements

Turning to the Rule 23 requirements, a class action suit will
be maintained where all the requirements of Rule 23 of the Federal
Rules of Civil Procedure are met. *See M.D. v. Perry*, 675 F.3d 832,
837 (5th Cir. 2012). Rule 23(a) provides the threshold
requirements:

> One or more members of a class may sue or be sued as
> representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members
> is impracticable; (2) there are questions of law or fact
> common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or
> defenses of the class; and (4) the representative
> parties will fairly and adequately protect the interests
> of the class.

Fed. R. Civ. P. 23(a). In addition to establishing the requirements
under Rule 23(a), plaintiff must also demonstrate that the class
action qualifies under Rule 23(b)(1), (2), or (3). *See M.D.*, 675
F.3d at 837.

In the instant case, the analysis will begin and end with the
requirements of Rule 23(a)(3) and Rule 23(a)(4), "which provide[]
that a district court may only certify a class if the claims or
defenses of the representative party are typical of the claims or
defenses of the class, and the representative party will fairly
and adequately protect the interests of the class." *Hardin*, 814 F.
Supp. at 706. "Drawing from these two subsections, courts

consistently hold that a class action may not be certified unless the named plaintiff has standing to seek the relief requested." *Id.* Where the class representative has no claim against the defendants, the class representative "lacks the requisite '*typicality*' and 'adequacy of representation' to litigate a claim against that defendant on behalf of a plaintiff class." *Matte v. Sunshine Mobile Homes, Inc.*, 270 F. Supp. 2d 805, 825 (W.D. La. 2003) (emphasis added) (citing *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 462 (9th Cir. 1973)).

Here, plaintiff cannot establish typicality or adequacy of representation because plaintiff, as the class representative, does not have a claim against defendants under this class definition. *See id.* This Court already decided that defendants were not time-barred from pursuing money owed under the Elevation Grant as the state prescription period of ten-years applies. *See* Rec. Doc. 42. Consequently, plaintiff cannot establish typicality or adequacy of representation under Rule 23(a)(3) and Rule 23(a)(4), and therefore, the class action cannot be certified.

New Orleans, Louisiana this 7th day of December, 2021

SENIOR UNITED STATES DISTRICT JUDGE